# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 425 | **DATE** | 5/1/2001 |
| **CASE TITLE** | Jordan Anderson et al vs. City of Wood Dale, IL | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, plaintiffs' motion for summary judgment [102-1] is granted in part and denied in part. Defendant's motion for summary judgment [98-1] is denied. It is so ordered.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices: 3

MAY 0 3 2001
date docketed

docketing deputy initials

MAY 0 3 2001
date mailed notice

Document Number

164

TSA
courtroom deputy's initials

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JORDAN ANDERSON, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) No. 93 C 425 | |
| | ) | |
| **CITY OF WOOD DALE, IL., a** | ) **Honorable Wayne R. Andersen** | |
| **municipal corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

DOCKETED

MAY 03 2001

## MEMORANDUM, OPINION AND ORDER

Plaintiffs, former and current employees of the City of Wood Dale police department, filed suit against the defendant, City of Wood Dale, seeking declaratory relief and compensation for attendance at daily pre-shift roll call, The material facts are undisputed, and the parties have filed cross motions for summary judgment to resolve the issue of whether the plaintiffs are entitled to compensation. For the reasons set forth below, plaintiffs' motion for summary judgment is granted in part and denied in part. Defendant's cross motion for summary judgment is denied.

### BACKGROUND

The plaintiffs are fifty-two current and former employees of the City of Wood Dale police department. The plaintiffs include supervisory police officers, sworn police patrol officers, and non-sworn community service officers, dispatchers, and other police support personnel. The sworn officers have been members of the Teamsters Local Union #714 Law Enforcement Division since 1989. The defendant, the City of Wood Dale, Illinois, is an Illinois municipal corporation.

On September 1, 1978, the City of Wood Dale and its police department implemented a written policy requiring all officers, community service officers, and dispatchers to report for "roll call" fifteen minutes prior to the beginning of each work day. This written policy, which was issued by Police Chief Frank E. Williams as general order #78-1, established roll call as a mandatory police activity designed to disseminate information and advise personnel of new changes and developments in law enforcement techniques and departmental policies and procedures. The #78-1 general order was silent on the issue of compensation for attending pre-shift roll call.

The law enforcement personnel were advised not to record roll call time on their time sheets or to submit overtime slips for the time spent at pre-shift roll call. Although roll call was a mandatory police activity, the department rarely disciplined any employee for tardiness in attending roll call. The only evidence of the department formally disciplining an employee is offered through the affidavit of officer Ronald LaMorte, who testifies that he was suspended for being late to roll call. The record reveals, however, that verbal reprimands for persons late or missing roll call were common.

Shortly after joining the department, each plaintiff became aware that they were not paid for attending roll call. On various occasions in the mid-1980s, informal complaints were made to Chief Williams regarding the lack of compensation for attending roll call. On one occasion in the mid-1980s, five police officers submitted overtime slips for time spent at roll call. These requests were denied, and Chief Williams advised the officers that they would not be paid for time spent at roll call. The parties dispute whether Chief Williams indicated that breaks and meal time compensated for time spent at pre-shift roll call. Despite these complaints, the record

2

reveals that none of the officers subject to the collective bargaining agreement ever invoked the grievance procedures available to them under their contracts.

In response to the complaints, Chief Williams issued a "Roll Call/Time Directive" clarifying the city's roll call policy. This directive, dated December 10, 1984, stated that the city compensated for attendance at roll call by permitting the attendees one paid, uninterrupted 30-minute meal break and two paid, uninterrupted 10-minute breaks per shift, and by allowing the officers to return to the police station 15 minutes early at the end of each shift. The parties dispute whether this directive was distributed to all police personnel. In fact, the evidence presented to the court strongly suggests that it was not.

During the breaks and meal periods, police officers could eat where they wanted (including home), read, listen to music, make personal telephone calls and run errands. The officers remained on call during these periods, which required them to remain in radio contact, remain in or near the City, and to remain in uniform. The officers were also required to travel in a police vehicle and were required to report to the dispatcher if they took their breaks outside their police vehicle. In his affidavit, Chief Williams testifies that the city provided compensatory time or pay for missed break time.

In the present case, plaintiffs seek compensation pursuant to the City of Wood Dale Personnel Policy Manual (the "Manual") for time spent at roll call until April 26, 1993. At all times relevant to the present litigation, the Manual defined a work day for police department personnel as one of three eight hour shifts. See 1978 Manual § 610. The Manual provided that all "[o]vertime work for regular full-time or probationary employees, except as otherwise provided, shall be defined as any time worked in excess of eight (8) hours per day or forty (40)

3

hours per week." Id. § 614.

The Manual provides that police officers and police personnel shall receive 1 and ½ times the customary hourly rate for all authorized work performed in excess of eight hours each work day. See Manual § 616. For all employees except sworn law enforcement, the Manual provides that such employees are "entitled to receive the base salary for each of the first forty (40) hours/per week of the pay period and 1.5 times the base hourly rate for each hour of work thereafter." Id. Under the Manual, sworn law enforcement employees are "entitled to receive the base salary for each of the first 43 hours per week of the 28 day pay period and 1.5 times the base hourly rate for each hour of work thereafter." Id.

On December 14, 1992, thirty-nine plaintiffs filed a multi-count declaratory judgment and accounting action in the Circuit Court of DuPage County, Illinois. Their complaint contained four counts. Count I alleged violations of the Personnel Policy Manual. Count II alleged a breach of the labor contract and Count III alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Count IV sought an accounting to determine the amount owed to each individual plaintiff. Thereafter, defendant properly removed the case to this court. This court had federal question jurisdiction over the FLSA claim and supplemental jurisdiction over the remaining counts.

Plaintiffs subsequently filed an amended complaint adding six additional plaintiffs and deleting one plaintiff. Plaintiff then filed a second amended complaint which added certain allegations to Count I. On February 8,1994, this court dismissed count II of the second amended complaint for failure to state a claim upon which relief could be granted. Plaintiffs then filed a third amended complaint adding five plaintiffs. On March 8, 1995, this court held that the five-

year statute of limitations applies to plaintiffs' claims asserted in Count I.

On October 23, 1995, plaintiffs filed the instant fourth amended complaint. The parties subsequently agreed to settle the FLSA claim set forth in count III. Pursuant to the stipulation, the parties and this court agreed to have the case remain in federal court for a final resolution.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Salima v. Scherwood South, Inc.. 38 F.3d 929, 932 (7th Cir. 1994). In considering such a motion, the court draws all reasonable inferences in favor of the party opposing the motion. Associated Milk Producers. Inc. v. Meadow Gold Dairies 27 F.3d 268, 270 (7th Cir. 1994). The moving party bears the burden of demonstrating an absence of evidence to support the position of the nonmoving party. Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 442-43 (7th Cir. 1994).

In making its determination, the court should not make credibility determinations or weigh evidence, but should only determine "whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoescht Corp. 24 F.3d 918, 920 (7th Cir.1994). The fact that the parties have filed cross motions for summary judgment does not relieve the court of its obligation to determine whether a material dispute of fact exists. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983). With these standards in mind, we now turn to the merits of the motion before us.

Plaintiffs in this case have argued two distinct theories of recovery which are mutually exclusive. Plaintiffs first contend that the applicable provisions of the Manual plainly provide for an eight hour day and defined overtime as "any time worked in excess of eight (8) hours per day or forty (40) hours per week" and created an implied contract in fact under <u>Duldulao v. Saint Mary of Nazareth Hospital Center</u>, 115 Ill.2d 482, 505 N.E.2d 314, 106 Ill. Dec. 8 (1987). In the alternative, plaintiffs argue that the City Council's adoption of the Manual created an implied in law contract. Under either theory, plaintiffs claim that they should be compensated for the mandatory time which they were forced to spend at roll call in addition to their regular eight hour shift.

As an initial matter, we must determine whether Plaintiffs' implied in law contract theory is timely. Plaintiffs first argued in their Motion for Summary Judgment that they are entitled to compensation for pre-shift roll call based on an implied in law contract theory. Defendant contends that Plaintiffs did not amend their complaint to reflect this change from an implied in fact to an implied in law theory of recovery, and cannot properly do so now.

When assessing defendant's argument, we are guided by the fundamental principle that parties must present their arguments to a court before it enters final judgment. <u>Havoco of America, Ltd. v. Sumitomo Corp. of America</u>, 971 F.2d 1332, 1336 (7th Cir. 1992). A party waives arguments that it does not present in its initial motion for summary judgment or in its response. <u>Id</u>.; <u>Arendt v. Vetta Sports, Inc.</u>, 99 F.3d 231, 237(7th Cir. 1996); <u>Bugg v. International Union of Allied Industrial Workers, Local 507</u>, 674 F.2d 595, 598 n.4 (7th Cir. 1982). In addition, "a plaintiff may recover under quantum merit on a claim made under an express contract without amendment to the pleadings, where the plaintiff fails to establish the

6

express contract but does show that in fact services were rendered." Slater v. Jacobs, 56 Ill.App.3d 636, 638, 371 N.E.2d 1054, 1056, 14 Ill.Dec.1, 3 (1st Dist. 1977).

Plaintiffs first raised the implied in law contract theory in their Motion for Summary Judgment, and it is, therefore, timely. Defendant has had ample time to prepare its response and brief its arguments. This Court allowed defendant to amend its responses to Plaintiffs' Request To Admit Facts and allowed additional time for discovery on the Roll Call/Time Directive. Because defendant has not been harmed and this Court had not previously entered a final appealable order, plaintiffs are not barred from asserting their implied-in-law contract theory.

However, Plaintiffs may not recover on implied in law contract if an express contract or contract implied in fact existed between the parties. Zadrozny v. City Colleges of Chicago, 220 Ill.App.3d 290, 294, 581 N.E.2d 44, 47, 163 Ill. Dec. 93, 96 (1st Dist. 1991). Contracts implied in fact arise from a promissory expression that is inferred from circumstantial evidence of an intent to be bound. Id., citing Gary-Wheaton Bank v. Burt, 104 Ill.App.3d 767, 775, 433 N.E.2d 315, 323, 60 Ill. Dec. 518, 526 (2nd Dist. 1982). Contracts implied in law arise notwithstanding the parties' intentions, result from a duty imposed by law, and are contracts merely in the sense that they are created and governed by principles of equity. Zadrozny, 581 N.E.2d at 47; citing Steinberg v. Chicago Medical School, 69 Ill.2d 320, 334, 371 N.E.2d 634, 641, 13 Ill. Dec. 699, 706 (1977). Therefore, our first inquiry must be whether plaintiffs have proved that a contract in fact existed between the parties which would grant them the compensation that they seek.

In Duldulao, the Illinois Supreme Court held that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract

formation are present. The court required that (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it is an offer and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. 115 Ill.2d at 490. If these conditions are all present, then the employee's continued work constitutes work for the promises contained in the statement, and under traditional principles a valid contract has been formed. Id.

Defendant argues that plaintiffs cannot satisfy these conditions because they cannot prove that there was a true meeting of the minds on plaintiffs' interpretation of the above-cited language. Defendant contends that each of the plaintiffs knew after they started working for defendant that, despite the language in the Manual that clearly seems to mandate overtime pay for the mandatory roll call time, the City would not pay them for this time. The City relies on the police chief's 1984 Roll Call/Time Directive, which stated that attendance at roll call would not be compensated, as a modification of any existing implied in fact contract to pay them for this time.

As defendant accurately points out, "[w]here it appears that the language used or the terms proposed are understood differently by the parties, there is no meeting of the minds and no contract exists between the parties." Vandevier v. Mulay Plastics, Inc., 135 Ill.App.3d 787, 790, 482 N.E.2d 377, 380, 90 Ill.Dec. 558, 561 (1st Dist. 1985). This is true whether one is dealing with an express contract or one implied in fact. Foiles v. North Greene Unit Dist. No. 3, 261 Ill.App.3d 186, 187, 633 N.E.2d 24, 25, 198 Ill.Dec. 562, 563 (4th Dist. (1994). In Barefield v.

City of Winnetka, the Seventh Circuit examined a similar (although not identical) police

personnel manual. 81 F.3d 704 (7th Cir.1996). Unlike the Manual before this court, the police

manual was not adopted by the municipality as an ordinance or resolution. The manual provided

that police officer should be compensated for any authorized work beyond the eight hour tour of

duty. The Village required officers to attend a mandatory fifteen minute roll call session and the

police officers sought compensation for this time. The court refused to recognize a contract

implied in fact because "even if we assume that the Manual created an enforceable

contract...there was no meeting of the minds that would establish a contractual right to

compensation for attendance at roll call." 81 F.3d at 709. Further, the court held that the

Manual also stated that "overtime work" meant work for at least thirty minutes beyond an eight

hour shift and, therefore, fifteen minutes would not constitute compensable time under the plain

meaning of the Manual. Id.

In this case, of course, the Manual sets forth no such limitation. Its language, although

not specifically referring to roll call attendance, requires that the City pay for any time during

which its officers must work beyond the eight hour shift. However, the record is clear that the

parties did not reach any true meeting of the minds on this point. The Wood Dale police officers

historically interpreted the Manual to mean one thing and they sporadically complained about the

City's failure to compensate them for mandatory work time in excess of the proscribed eight hour

shift. However, some, if not all, of the officers became aware after they started working for the

City that this time would not be compensated. For its part, the City refused to pay for this time,

but still required that the officers be present for roll call. Therefore, we are unable to find any

true meeting of the minds about what the language of the Manual meant with respect to roll call

time.

We give little weight to defendant's contention that the 1984 Roll Call/Time Directive made it plain to all of the officers that roll call was not compensated and, therefore, that there was an implied contract in fact existing between the parties which excluded the roll call time from compensation. The record before us is replete with factual disputes concerning how this document was disseminated, but what is clear is that no one hired after it was issued on December 10, 1984 ever received it (which would include half of the plaintiffs), and it is doubtful that it was disseminated to each of the remaining plaintiffs.

Next, we must consider whether the Manual creates a contract implied in law that entitles plaintiffs to compensation for time spent at roll call. "Contracts implied in law arise notwithstanding the parties' intentions, result from a duty imposed by law and are contracts merely in the sense that they are created and governed by principles of equity." Cannella v. Village of Bridgeview, 284 Ill.App.3d 1065, 673 N.E.2d 394, 400, 1075, 220 Ill.Dec.482, 488, (5th Dist. 1996). Under Illinois law, an obligation enforced by equitable theories of recovery "is independent of any agreement between the parties or of their personal intentions." P.S. Johnson v. Gudmundsson, 35 F.3d 1104, 1114 (7th Cir. 1994). An implied contract action is maintainable when "one party has received money or its equivalent under circumstances in which, according to the dictates of equity and good conscience, he ought not to retain such benefit." Id. citing Rutledge v. Housing Authority of the City of East St. Louis, 88 Ill.App.3d 1064, 1067-68, 411 N.E.2d 82, 85-86, 44 Ill. Dec. 176, 179-80, (5th Dist. 1980)); see also Aiardo Village of Libertyville, 184 Ill. App.3d 653, 132 Ill. Dec. 939, 540 N.E.2d 861 (2nd Dist. 1989).

Although the Illinois Supreme Court has not ruled on this issue, an Illinois appellate court

has held that an implied in law contracted existed based on a similar personnel policy manual enacted as a village ordinance. Canella, 284 Ill.App.3d at 1075, N.E.2d at 400-401, 220 Ill. Dec. at 488-89. In Cannella, the court held that police officers were entitled to payment for time spent at pre-shift roll call because the policy manual included a provision that entitled officers to overtime pay for "any duties required by the head of any department ... to be performed in off-duty periods." 284 Ill. App.3d at 1069, 673 N.E.2d at 396., 220 Ill. Dec. at 484.

Defendant proffers a myriad of arguments to defeat plaintiffs' implied-in-law contract claim. One of these defenses is its belated discovery that the ordinance adopting the Manual allegedly had been repealed and replaced with a resolution. Thereafter, the Manual was amended from time to time by resolution. According to defendant, because the Manual was not adopted as a "law," plaintiffs may not establish a contract implied in law.

Throughout most of the litigation in this case, the City's position was that the Manual had been adopted by city ordinance. After several briefs on the cross motions for summary judgement had been filed, the City for the first time asserted that this was not the case. According to the City, the Manual was adopted as Ordinance 488 on October 19, 1967. This ordinance was repealed on August 21, 1969 and replaced with Ordinance 588, adopting another version of the Manual. On February 21, 1974, Ordinance 74-836 amended this ordinance. After this point, the legislative history becomes murky. Defendant apparently codified Ordinance 74-836 as Chapter 19 of the City Code at some point (although it has not offered any evidence to this effect) and then, on July 20, 1978, adopted Ordinance 1007 which purportedly repealed Chapter 19. On that same date, by Resolution 78-22, the City Council adopted a new Personnel Policy Manual. On subsequent dates, the Council amended that Manual in a few

respects irrelevant to this litigation by resolution. Then, on June 18, 1998, after the City learned

of the above history, the Council repealed Ordinance 588 and 74-836 again by adopting

Ordinance 1931.

Plaintiffs argue that the last act demonstrates the City's recognition that its earlier attempt

to repeal the ordinance had been ineffective and, therefore, at least until June 18, 1998, the

Manual adopted by Ordinance 74-836 remained in effect. However, plaintiffs cite no authority

which states that the codification of the Manual as Chapter 19, which is essentially an

administrative act, was improper, or that by repealing the ordinance by reference to its codified

forms and not by its ordinance number renders the repeal somehow ineffective. We have

examined the record carefully and we believe that the City's clear intent was to repeal Ordinance

74-836 and replace it with Resolution 78-22.

We do not believe, however, that this should end the analysis as defendant suggests.

Municipal law has long recognized that "[a] resolution or order is not law, but merely the form in

which the legislative body expresses an opinion." Chicago & Northern Pacific R.R. v. City of

Chicago, 174 Ill.439, 51 N.E.596, 598 (1898). By contrast, ordinances are enactments that

establish "a permanent rule of conduct or government, and which are to have continuing force

and effect." Village of Altamont v. Baltimore & Ohio Southwestern Ry., 184 Ill. 47, 56 N.E.

340, 341 (1900). However, the more practical distinction between the two is that ordinances

must be used whenever the municipality's charter or state law compel that they be used. Illinois

Municipal Retirement Fund v. City of Barry, 52 Ill.App.3d 644, 367 N.E.2d 1048, 10 Ill. Dec.

439 (4th Dist. 1977).

Nothing in state law compels that the City of Wood Dale had to enact the personnel

policy Manual as an ordinance. Further, although the defendant now asserts that the Manual is a resolution, it believed it to be an ordinance throughout most of this litigation. Moreover, the documents tendered to the court concerning the legislative history of the Manual do not reveal any real difference between the way resolutions were passed in Wood Dale from the manner in which ordinances were passed. As McQuillen points out, "[g]enerally, whether what is done by a municipal legislative body is an ordinance or a resolution depends not on what the action is called but the reality...[W]here a resolution is in substance and effect an ordinance or permanent regulation the name given to it is immaterial." 5 McQuillen on Municipal Corporations, §15.02 at p.46.

We need not definitively decide whether the Manual was enacted as an ordinance or a resolution, however, because we do not believe that this distinction should govern the instant dispute. At its essence, this case involves relative equities. We do not believe that it is fair for the City of Wood Dale to legislate (in whatever fashion) that time over and above an eight hour shift be compensated and then (through its police department) require that police officers work an additional fifteen minutes each day to attend a mandatory roll call session without compensation. The implied in law contract is doctrine of equity designed to redress unjust enrichment. Premier Electrical Construction Co. v. LaSalle National Bank, 139 Ill.App.3d 542, 547, 94 Ill. Dec. 97, 101, 487 N.E.2d 974, 978 (1985). Actions for implied in law contracts are maintainable when a party has unjustly retained a benefit to another's detriment, and when retention of the benefit violates the fundamental principles of justice, equity, and good conscience. P.S. Johnson v. Gudmundsson, 35 F.3d 1104, 1113 (7th Cir.1994).

We believe this to be such a case. Nothing in Cannella suggests that the courts' decision

should turn on the legal distinction between an ordinance and a resolution. Although that case involved an ordinance, the court's holding focused on the city's failure to make equitable payment for a benefit that it demanded from the plaintiffs. 284 Ill. App. 3d at 1074, 673 N.E.2d at 400, 220 Ill. Dec. at 488. The court did point out that defendants had a duty to enforce its ordinance which mandated overtime pay. Id. However, we are at a loss to understand why the City is at liberty to ignore its own policy, adopted by resolution, simply because it is expressed as a resolution instead of an ordinance. The City was free at any time to amend the resolution to require unpaid attendance at roll call. It did not. We do not believe that the Court should amend the resolution when the City itself apparently was unwilling to do so. The City cites McCarty v. City of Rockford for the general proposition that a plaintiff may not maintain a lawsuit based on a resolution. 96 Ill. App.3d 531, 533, 421 N.E.2d 576, 578, 51 Ill. Dec. 941, 943 (2nd Dist. 1981). However, that case is easily distinguished. The plaintiff in McCarty sought to enforce a resolution which suggested that he receive certain sick benefits when an ordinance already in place dictated otherwise. It is in that context in which the court held that a resolution cannot supplant an ordinance as a legal basis for relief. The question here is whether the City is free to ignore its own resolution requiring that payments be made. We hold that it is not.

The bottom line is that the City Council has consistently has maintained a policy that requires payment for time over and above eight hours. Therefore, to the extent officers are required to work beyond that time, they should be compensated for it as set forth in the Manual. We do not believe that the Seventh Circuit's decision in Barefield (which we already have discussed) mandates a different conclusion. In that case, plaintiffs did not urge an equitable theory of relief and, in any event, that case predated the Cannella case which interpreted the

14

applicable Illinois law on this subject.

Defendant also argues that the holding in the Cannella case does not apply because the Wood Dale Manual contains dissimilar provisions from those in that case. Specifically, defendant claims that the police chief and city manager have authority under Manual Sections 610 and 102 to enact the Roll Call/Time Directive and General Order 78-I, which override the Manual. Section 610 states, "Upon request of a Department Head, the City Manager is hereby authorized to designate other working hours for employees when, in his opinion, the best interest of the City may be served." Section 102 states, "Department Heads may create rules and regulations more specific to the department's operations. None of the departmental rules, however, shall be in conflict with those set forth in this Personnel Policy Manual."

We are not persuaded by defendant's argument that the Roll Call/Time Directive and General Order 78-1 should control over the Manual provisions. A police department order does not countermand policy established by the city council. Aiardo, 184 Ill. App.3d at 653, 132 Ill. Dec. at 939, 540 N.E.2d at 861. Further, Section 610 does not grant the police chief or city manager authority to establish policies inconsistent with the Manual, and Section 102 expressly denies such authority.

Defendant argues that the Illinois Appellate Court's decision in Athanas v. The City of Lake Forest, 276 Ill.App.3d 48, 657 N.E.2d 1031, 212 Ill. Dec. 686 (2nd Dist. 1985) supports its argument that the police department orders effectively modified the policy as expressed in the Manual because those orders subsequently were ratified by the Council. In Athanas, the court held that the city manager did not have the authority to order unpaid attendance at police roll call when the personnel manual required compensation for any time spent over and above the forty

hour work week. The city in that case argued that the police department and city managers had authority from the city council to modify the language requiring payment because one section of the manual allowed the department to prescribe rules and regulations governing the conduct of police officers which, if approved by the city manager, would be binding on the police officers. In response, the plaintiffs argued that the manual limited the authority of the city manager to making changes that were consistent with the manual. The court found that the roll call policy was plainly inconsistent with the manual and, therefore, there was no express authority for the city manager to require the unpaid roll call. As we already have discussed, the Manual in this case also bars the police chief and city manager from implementing policies inconsistent with the Manual.

But the court in <u>Athanas</u> went on to hold that the city council in Lake Forest ratified the police department and city manage's roll call policy. Specifically, it held that the City Manager's unequivocal testimony that he had made the council aware of the policy and had provided a written report to this effect established that the city council had both known about the modification and had acquiesced to it. <u>Id.</u> It further held that the defense of the action also constituted a ratification of the modification of the Manual.

We agree with plaintiff that the evidence in this case does not prove that Police Chief Williams provided the City Council with sufficient notice of the roll call policy to find that the Council in effect authorized the police chief to change the policy expressed in the Manual. Police Chief Williams neither could identify a specific written report that he had made advising the Council of the roll call policy nor relay any specific discussion he had with the Council about the policy. Our review of the Council minutes did not reveal any discussion about the

16

implementation of the policy. Defendant failed to show that the City Council ratified any change in the policy.

In addition, any argument that the Council ratified the actions which might be implied from the defense of this law suit is undermined by the fact that title of Section 1601 of the Manual itself requires changes in the Manual to be made through "amendment by resolution of the City Council." We do not believe the simple act of defending the lawsuit satisfies this requirement. Further, such ratification would only have occurred upon the filing of this lawsuit in 1993 and plaintiffs here seek damages only until April 26, 1993.

Defendant also argues that plaintiffs waived their right to compensation by continuing to work even though they were aware of the City's custom of not paying overtime for time spent at pre-shift roll call. In <u>Cannella</u>, the court rejected similar arguments, stating:

> [T]he ordinance expressly states that plaintiffs were to receive overtime compensation for any time worked over 40 hours. Because defendants had a duty to enforce the ordinance, plaintiffs could expect to be paid for time spent during roll call. In our view, defendant's acceptance of the benefit of plaintiffs' attending roll call, and defendant's failure to meet its duty to compensate plaintiffs for roll call, constituted unjust enrichment.

<u>Cannella</u>, 284 Ill. App.3d at 1075, 673 N.E.2d at 400-401, 220 111. Dec. at 488-89. We agree with the <u>Cannella</u> count.

Defendant also contends that plaintiffs did not obtain their supervisors' prior approval for overtime compensation, which was required pursuant to manual Section 615. Plaintiffs counter that General Order 78-1 and the Roll Call/Time Directive constituted approval because they required plaintiffs' attendance at roll call. Similarly, in <u>Cannella</u>, the village contended that plaintiffs waived their claims because they failed to follow the proper procedures for obtaining

overtime compensation. <u>Cannella</u>, 284 Ill. App. 3d at 1072, 673 N.E.2d at 399, 220 Ill. Dec. at 487. In that case, the village had instructed officers not to submit claims for overtime compensation for roll call. <u>Id</u>. Thus the <u>Cannella</u> court held that "it would have been futile for officers to adhere to the standard operating procedures for obtaining overtime compensation for roll call." <u>Id</u>. We also hold that it would have been futile for plaintiffs to submit overtime claims for pre-shift roll call. Plaintiffs submitted requests for compensation for pre-shift roll call, which defendant denied. Accordingly, we do not find that plaintiffs' claims are waived in this case.

To defeat plaintiffs' implied in law contract claim, defendant next argues that plaintiffs already have been paid for time spent at pre-shift roll call. Defendant contends the Roll Call/ Time Directive is evidence that lunch periods and breaks could be used to offset time spent at roll call. Specifically, defendant contends the Roll Call/Time Directive establishes the City's policy of giving plaintiffs ten minutes at lunch and five minutes prior to the end of their shift in exchange for attendance at pre-shift roll call.

This argument is premised on the assertion that lunch and the early return were unpaid time and not considered part of plaintiffs' regular eight-hour shift. We find this to be contrary to the Manual's definition of standard work periods. Section 609 of the Manual describes plaintiffs' standard work period in terms of eight-hour shifts. If the thirty minute lunch break were intended to be uncompensated personal time to be set off against the fifteen minute pre-shift roll call, plaintiffs' workday would be seven and 3/4's hours (or less if other breaks were also deducted).

We do not believe that this interpretation of the Manual makes sense. Defendant's argument that employees were entitled to reschedule missed breaks or receive payment for

missed lunch periods does not negate the fact that meal time appears always to have been included as part of the "eight hour" shift. This finding is in harmony with two other Illinois appellate court decisions. Cannella, 284 Ill. App.3d at 1076, 673 N.E.2d at 401, 220 Ill. Dec. at 489, Aiardo, 184 Ill.App.3d at 657, 132 Ill. Dec. at 943, 540 N.E.2d at 865. Accordingly, we conclude that mealtime and breaks cannot be used to offset the pre-shift roll call.

Finally, defendant contends that it is not required to pay overtime compensation to plaintiffs because it never appropriated funds in its budget ordinance for such purpose. Section 8-1-7 of the Illinois Municipal Code provides:

> [N]o contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality.

65 Ill. Comp. Stat. 5/81-7 (West 1992). Plaintiffs argue that the city's annual budget contains a general line item for overtime and includes in the budget detail overtime for "Dept. meetings/staff mtgs" and "criminal investigations."

Compensation for overtime was provided for in the defendant's annual budget for the years 198 1-82 through 1990-91. The defendant's budget detail lists categories of overtime for which compensation was paid. While the defendant's budget detail does not show that an appropriation was made specifically for roll-call overtime pay, that does not establish that compensation for overtime was not otherwise appropriated. Aiardo, 184 Ill.App.3d at 658, 132 Ill. Dec. at 943, 540 N.E.2d at 865. "There is no basis to draw a fine-line distinction between roll call and other overtime compensation." Cannella, 284 Ill. App. 3d at 1074, 220 Ill. Dec. at

488, 673 N.E.2d at 400.

Although we hold that plaintiffs' are entitled to compensation, the question remains as to the amount of compensation to which plaintiffs are entitled. Defendant and sworn police officers entered into a collective bargaining agreement on March 2,1989, and thereafter, on September 3, 1992 ("CBA"). Article XX. Section 5 of the 1989 and 1992 Collective Bargaining Agreements provides the following grievance procedures:

> Time Limits. A. Grievances must be presented by the employee within fifteen *(15)* calendar days from occurrence of the event giving rise to the grievance or fifteen *(15)* calendar days from the date the event should have been known to the employee, whichever occurs later, except that for errors in pay, the time period shall be (6) months. B. An employee's failure to file a grievance within the time period specified shall constitute a waiver of any rights to advance the grievance.

Plaintiffs contend that they were not required to file a grievance under the CBA because the CBA supersedes the Manual only when its provisions differ from the Manual. Because both the CBA and the Manual entitle police officers and non-sworn employees to compensation for hours worked over forty, plaintiffs claim the Manual's informal grievance procedures control and the grievances procedures are irrelevant.

Defendant contends that plaintiffs' failure to grieve the roll call pay issue as specified and negotiated in the CBA constitutes a waiver of their claim to overtime pay. Defendant relies on Bartoszewski v. Village of Fox Lake, 269 Ill.App.3d 978, 647 N.E.2d 591, 207 Ill. Dec. 360 (2nd Dist. 1995). In Bartoszewski, the Village argued the labor contract and its grievance procedures controlled the pre-shift roll call dispute. Id. at 986-87, 647 N.E., 2d at 596-97. The Court held that the express language of the labor contract evinced a clear intent to waive any reliance on the Village ordinance on that subject. Id. We agree with the Bartoszewski court. When a party to a

20

labor agreement waives a right, evidence of their intent to do so must be clear and unmistakable. Village of Oak Park v. Illinois State Labor Relations, 168 Ill.App.3d 7, 20, 118 Ill. Dec. 706, 522 N.E.2d 161 (1st Dist. 1988). Article XX, Section 5 of the CBA allows union members six months to file a grievance for errors in pay. This is an exception to the fifteen day time limit for all other grievances. The CBA's plain language evinces an intent to waive any reliance on the City Manual allowing informal grievance procedures.

However, we believe that there is even a more compelling reason to bar claims following the adoption of the CBA. We already have held that the Manual, adopted by resolution, provides for compensation for overtime and, given this commitment, equity compels that the City pay for roll call. However, the police officers subsequently sought and obtained a collective bargaining agreement with that City. This CBA provided a method for grieving any dispute surrounding compensation. Unlike the informal methods provided in the Manual, such grievances would have been subject to mandatory arbitration. Further, at the time that they negotiated the CBA, the police officers could have explicitly bargained for roll call compensation. They chose not to do so. The court views this inaction as a clear relinquishment of their rights. Accordingly, we find that union plaintiffs' claims arising after March 2, 1989, which were not brought within six months of the time they occurred, are waived by their failure to file a grievance.

In summary, we hold plaintiffs are entitled to overtime compensation in accordance with Section 616 of the Manual. In addition, the following limitations will apply: 1) each plaintiff is barred from recovering on his or her individual contract claim for overtime compensation beyond the five-year period immediately prior to the commencement of each plaintiffs respective cause of action; and 2) each sworn police officer who is covered by the CBA is barred from recovering

21

on his or her individual claim arising after March 2, 1989, if he or she did not file a grievance within six months of the error in pay. At the next status hearing, the parties should be prepared to discuss an appropriate hearing date for the accounting.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment is granted in part and denied in part. Defendant's motion for summary judgment is denied.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: May 1, 2001